FILED
JEANNE A. NAUGHTON, CLERK

JAN 2 4 2017

U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY_____DEPUTY

**NOT FOR PUBLICATION**

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | |
| In re:<br><br>Theresa C. Fisher,<br><br>Debtor. | Case No.:  16-12991-ABA<br><br>Adv. No.:  16-1377-ABA |
| SSS Education, Inc. d/b/a Jersey College,<br><br>                              Plaintiff,<br>v.<br><br>Theresa C. Fisher,<br><br>                              Defendant. | Chapter:  7<br><br>Judge:  Andrew B. Altenburg, Jr. |

## MEMORANDUM DECISION

Before the court is a motion for summary judgment (the "Motion") by Plaintiff SSS Education, Inc. d/b/a Jersey College (hereinafter "Jersey College") in its action against Theresa C. Fisher (hereinafter "Ms. Fisher"). Jersey College commenced this Adversary Proceeding pursuant to section 523(a)(6) of Title 11 of the United States Code (the "Bankruptcy Code") seeking to have the debt owed to it by Ms. Fisher, which debt was reduced to a judgment in the state court after an arbitration proceeding, declared non-dischargeable as a willful and malicious injury. For the reasons that follow, the court finds that Jersey College has established that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law that the debt owed to it arises as a result of a willful and malicious injury. Thus, Jersey College's Motion is granted.

## JURISDICTION AND VENUE

This matter before the court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (O), and the court has jurisdiction pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012, referring all bankruptcy cases to the bankruptcy court. The following constitutes this court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## PROCEDURAL HISTORY

On May 25, 2016, Jersey College, by and through counsel, filed the Adversary Proceeding Complaint ("Complaint") for nondischargeability pursuant to section 523(a)(6) of the Bankruptcy Code for a willful and malicious injury (Doc. No. 1). On June 10, 2016, Ms. Fisher filed her answer ("Answer") (Doc. No. 3). On August 30, 2016 a joint scheduling order was entered scheduling, among other things, a trial date of January 4, 2017 (Doc. No. 6). On November 4, 2016, Jersey College filed the instant Motion (Doc. No. 8). The hearing for the Motion was set for November 29, 2016. Ms. Fisher appeared at the hearing and stated that she had in fact submitted a response, but that it never appeared on the docket. The court conferred with its clerk's office and discovered that Ms. Fisher had submitted documents on October 28, 2016, a week prior to the filing of the Motion, but because the documents appeared to be exhibits for trial, they had not been placed on the court's docket. Ms. Fisher stated that she believed that she was not required to file any response to the Motion as she assumed the trial exhibits provided the information necessary to constitute a response to the Motion. Due to Ms. Fisher's misunderstanding[1] and the fact that neither Jersey College nor the court had an opportunity to review these materials,[2] the hearing was adjourned to January 3, 2017. Both parties were granted an opportunity to submit additional responses prior to that hearing. The trial was adjourned pending the outcome of the Motion.

Jersey College filed supplemental documents on December 13, 2016 (Doc. Nos. 11 and 12) and a brief in support of its motion on December 20, 2016 (Doc. No. 13). Ms. Fisher filed a response on December 22, 2016 (Doc. No. 14). Finally, a full transcript of the arbitration proceeding was submitted along with exhibits on December 27, 2016 (Doc. No. 15) and Jersey College submitted a supplemental response on December 29, 2016 (Doc. No. 16). The January 3rd hearing was held. Counsel for Jersey College appeared. Ms. Fisher did not.

Following the hearing, the court took this matter under advisement. This matter is now ripe for disposition.

---

[1] The Court is cognizant of Ms. Fisher's self-represented status and has, accordingly, granted Ms. Fisher a certain degree of leniency. Courts are encouraged to be more lenient when a litigant proceeds self-represented. *In re Rusch*, No. BKR. 09-44799, 2010 WL 5394789, at *2 (Bankr. D.N.J. Dec. 28, 2010) (citing *Huertas v. U.S. Dept. of Education*, 2010 WL 2771767 (D.N.J. 2010)). *See Erickson v. Pardus*, 551 U.S. 89 (2007). Courts recognize the importance of proceeding with caution and issuing rulings on the merits, as opposed to narrowly focusing on procedural niceties. *In re Marasek*, No. 08-30919, 2013 WL 5423222, at *2 (Bankr. D.N.J. Sept. 30, 2013). In the same vein, it is axiomatic that the Court has discretion to relax court rules in the interests of justice. *Id.* A document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, at 106, 97 S. Ct. 285 (1976). "All pleadings shall be so construed as to do substantial justice." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[2] The documents were subsequently placed on the court docket as Doc. No. 9.

## FINDINGS OF FACT

The pertinent unrefuted facts[3] in this Adversary Proceeding are as follows:

Jersey College is an educational institution accredited by the Commission of the Council on Occupational Education offering associates degrees for nursing programs (Doc. No. 11-6). It is recognized as such by the State of New Jersey Office of the Secretary of Higher Education. *Id.* Ms. Fisher was enrolled as a student at Jersey College. Course requirements and standards, including methods of evaluation, were provided to Ms. Fisher (Doc. Nos. 11-8 and 11-14). Additionally, Jersey College provided to Ms. Fisher information about its accreditation status in the initial enrollment agreement as well as in its Frequently Asked Questions packet. (Doc. Nos. 11-3, 11-4, 15 p. 6).

At one point, Jersey College advised Ms. Fisher that she failed Senior Seminar, a course necessary for graduation (Doc. Nos. 1, ¶ 10; 11-9). A dispute arose between the parties. Ms. Fisher started a derogatory campaign against the school. Jersey College demanded that Ms. Fisher cease and desist in her campaign against it, and ultimately because she did not, terminated her as a student at Jersey College (Doc. No. 11-7).

Students at Jersey College sign a contract agreeing that any disputes with the school will be resolved through binding arbitration by the American Arbitration Association ("AAA") (Doc. Nos. 11-3 and 11-4). On March 13, 2015, Jersey College requested arbitration in response to what it deemed to be a campaign of harassment and defamation conducted by Ms. Fisher. The arbitration complaint by Jersey College against Ms. Fisher included claims for defamation (including knowingly false statements), tortious interference with a prospective economic advantage, breach of contract, and harassment (Doc. No. 11). The arbitration proceeding began on April 30, 2015, with a preliminary teleconference. Although notice was provided to her by the AAA (Doc. No. 15, p. 5, ¶1.21), Ms. Fisher did not appear for the teleconference. Only the arbitrator and Jersey College were involved. An evidentiary arbitration hearing was scheduled and notice was provided to Ms. Fisher by the AAA (Doc. No. 15, p.5, 1.8). Despite her statement to the contrary (Doc. No. 14), the arbitrator concluded that Ms. Fisher was actually aware of the proceedings due to communications from her and/or her potential representative regarding same (Doc. No. 15, p .6). On May 13, 2015, an evidentiary arbitration hearing was held and Ms. Fisher, again, did not appear. During the hearing, Jersey College submitted pleadings, documents, briefs and testimony from four witnesses (Doc. No. 15, p. 2–4).

---

[3] Jersey College almost exclusively relied on a transcript of the record it made in the arbitration hearing for its allegations of facts here. While normally a transcript would be considered hearsay, the Third Circuit has held that "hearsay statements can be considered on a motion for summary judgment if they are capable of being admissible at trial." *Diversified Indus., Inc. v. Vinyl Trends, Inc.*, CV 13-6194 (JBS/JS), 2016 WL 6897783, at *7 (D.N.J. Nov. 22, 2016) (citing *Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016) (emphasis in original). As the employees of Jersey College who testified in the arbitration proceeding, having personal knowledge of these facts, would be available to testify at trial here in this adversary proceeding, this court may consider the facts alleged in the arbitration proceeding.

The arbitrator found in favor of Jersey College based on the evidence Jersey College presented. On June 12, 2015, the arbitrator issued his written findings and Final Award of Arbitrator ("Award") (Doc. No. 1-2). The arbitrator's final award found, among other things, that Ms. Fisher took reprisals against Jersey College for its failure to graduate her, including organizing students to picket and demonstrate, and uploading demonstrably false statements about Jersey College. *Id.* at p. 1. Her reprisals took the form of "attacking the bona fides of [Jersey College's] nursing program through print media, social media, and picketing." *Id.* Further, these reprisals were for the express purpose of extorting a degree from Jersey College, and the activities of Ms. Fisher "had their intended effect of wreaking havoc upon [Jersey College's] operations." *Id.* at pp. 1-2. "[Ms. Fisher's] reprisals have the additional purpose of punishing [Jersey College] on account of its refusal to graduate her." *Id.* at p. 1. Finally, the arbitrator stated in the Award that Ms. Fisher's "willful and malicious activities have caused financial losses to Claimant in excess of $250,000." *Id.* at p. 2.

Jersey College then filed a complaint, on notice to Ms. Fisher, with the New Jersey Superior Court to confirm the final arbitration award, on August 28, 2015 (Doc. No. 1, p. 5). A Judgment on Award ("Judgment") was entered in favor of Jersey College on October 8, 2015 confirming the findings and Award of the arbitrator (Doc. No. 1-3). Jersey College proceeded with execution on its Judgment.

Ms. Fisher filed her chapter 7 bankruptcy petition on February 19, 2016. This Adversary Proceeding and Motion followed.

In this court, Jersey College submitted undisputed evidence of a Youtube video titled "Jersey College a fraud" that Ms. Fisher appeared in where she made statements that Jersey College was not an accredited program (Doc. No. 11-2). The video had been viewed numerous times, and comments left by viewers, including current and prospective students of Jersey College, evidenced that the video had the effect of causing them to be scared to continue with the school, to question whether to attend, or to change their minds about attending the school at all (Doc. Nos. 11-2 and 12-1). The Youtube video eventually became the number one result when searching "Jersey College" on Youtube or Google (Doc. Nos. 11-12; 11-13). In addition, Jersey College submitted evidence of broader harm to Jersey College as a direct result of Ms. Fisher's campaign. *See* Doc. Nos. 12-1; 12-3. Jersey College also submitted evidence that Ms. Fisher had been made aware of its accreditation status. (Doc. Nos. 11-3; 11-4). Ms. Fisher has not disputed any of these facts.

Other evidence presented reflects that Ms. Fisher had organized and been involved in picketing outside the school carrying signs with derogatory statements about the school (Doc. No. 11-10). There was also evidence submitted that Ms. Fisher posted pictures on Facebook of her picketing with these signs, with comments from Ms. Fisher stating that she was posting the images to spread awareness. *Id.* Further evidence was of an Instagram page created or used by Ms. Fisher titled "boycottjerseycollege," as well as other social media presenting defaming statements about Jersey College (Doc. No. 11-11). In addition, Ms. Fisher circulated a letter to current students stating that Jersey College had been put on suspension by accrediting bodies, which included the hash tag "#shutdownjerseycollege" (Doc. No. 12-2). Ms. Fisher has not disputed any of these facts.

During the arbitration hearing, the President of Jersey College testified as to multiple students asking about the allegations. He further testified that enrollment had dropped and that there was increased concern among current students about the school losing its accreditation. (Doc. No. 15, p. 19-20). The Campus Coordinator testified that there was a spike in students questioning Jersey College's accreditation as a result of what they had seen on the Youtube video (Doc. No. 15, p. 35). Further testimony was offered that the admissions office was receiving multiple calls from prospective students regarding its accreditation. A campus administrator for the Florida campus testified that he had spoken to a number of students directly regarding the allegations, and that a few students had withdrawn from the program because of them (Doc. No. 15, p. 37). Additional testimony was offered that several investigations from governing bodies had been conducted as a result of this, and that the school lost relationships with clinical sites that worked with Jersey College (Doc. No. 15, p. 37-39 and 75). A campus administrator testified that a significant portion of his work was soon dedicated to meeting with students and reassuring them of the school's accreditation and viability. Jersey College's president testified as to the extended time he was forced to spend having similar meetings with the school's affiliated clinical sites. There was also testimony that Ms. Fisher continued her conduct after two separate letters were sent to her, via certified mail and email, explaining that her conduct was harming the school, and demanding that she cease and desist in her actions (Doc. No. 15, p. 31).

Ms. Fisher has not presented, in any of the pleadings filed or arguments made in this court, any issue with regard to the material facts set forth above. In her initial answer, Ms. Fisher did not dispute any of the alleged conduct but instead stated only that the amount of damages stated by Jersey College is false and that Jersey College had not produced any records of its losses (Doc. No. 3). In her supplemental response to the Motion, Ms. Fisher again did not deny any of the factual allegations, but stated that the statements she made were protected by the First Amendment, and further that her statements were merely her opinion and not an attempt to extort a degree from Jersey College (Doc. No. 14). Finally, Ms. Fisher mistakenly indicated that there were allegations of common law fraud in the Complaint by Jersey College, and she denied ever acting fraudulently (Doc. No. 14).

## CONCLUSIONS OF LAW

Initially, it is important to set the parameters of this court's decision. The Rooker–Feldman doctrine prevents federal courts from sitting as appellate courts for state court judgments. *In re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005) (*citing Port Auth. Police Benevolent Assoc., Inc. v. Port Auth. of N.Y. and N.J. Police Dept.*, 973 F.2d 169, 173 (3d Cir. 1992)). The Rooker-Feldman doctrine applies even when a state court is in error. *In re Singleton*, 230 B.R. 533, 538 (B.A.P. 6th Cir. 1999); *Audre, Inc. v. Casey (In re Audre, Inc.)*, 216 B.R. 19, 29 (B.A.P. 9th Cir. 1997) (*citing In re Highway Truck Drivers & Helpers, Teamsters Local No. 107*, 100 B.R. 209, 216 (Bankr. E.D. Pa. 1989)). *See also In re Andrews*, No. 03 16226 GMB, 2006 WL 4452986, at *4 (Bankr. D.N.J. May 10, 2006) ("The Rooker–Feldman doctrine prohibits bankruptcy courts from reviewing the final determinations of a state court, 'even those that are erroneous.' *Grey v. State of New Jersey*, 2003 U.S. App. LEXIS 26660, at *6 (3d Cir. 2003)"). Thus, this court cannot offer Ms. Fisher an opportunity to re-litigate the matters determined at the prior arbitration and reduced to the Award that was ultimately confirmed by the state court through its Judgment. If Ms. Fisher wishes to challenge and/or seek relief from the Judgment and the underlying Award, and/or the

amounts thereof, she must return to those forums to exercise whatever rights she has, if any. Moreover, there was no allegation of fraud in the Complaint, as Ms. Fisher mistakenly indicated in her supplemental response to the Motion. As such, the decision by this court makes no determination as to any matters regarding fraud. The only issue before this court is whether Ms. Fisher's debt to Jersey College, as previously determined by the Award and confirmed by the state court's Judgment, should be excepted from discharge under section 523(a)(6) as a debt for willful and malicious injury.

### A. Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *In re Moran-Hernandez*, No. 15-17634, 2016 WL 423705, at \*2-\*3 (Bankr. D.N.J. Feb. 2, 2016). As the Supreme Court has indicated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *In re Moran-Hernandez*, No. 15-17634, 2016 WL 423705, at \*2-\*3 (Bankr. D.N.J. Feb. 2, 2016) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). "In deciding a motion for summary judgment, the judge's function is to determine if there is a genuine issue for trial." *In re Moran-Hernandez*, No. 15-17634, 2016 WL 423705, at \*2-3 (Bankr. D.N.J. Feb. 2, 2016) (quoting *Josey v. John R. Hollingsworth Corp., 996* F.2d 632, 637 (3d Cir. 1993)).

In determining whether a factual dispute warranting trial exists, the court must view the record evidence and the summary judgment submissions in the light most favorable to the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Disputed material facts are those "that might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute is genuine when it is "triable," that is, when reasonable minds could disagree on the result. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (citations omitted).

Once the moving party establishes the absence of a genuine dispute of material fact, the burden shifts to the non-moving party. A party may not defeat a motion for summary judgment unless it sets forth specific facts, in a form that "would be admissible in evidence," establishing the existence of a genuine dispute of material fact for trial. *In re Moran-Hernandez,* No. 15-17634, 2016 WL 423705, at \*2-\*3 (Bankr. D.N.J. Feb. 2, 2016) (citing Fed. R. Civ. P. 56(e), and providing that in response to a summary judgment motion the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine [dispute] for trial"). *See also Fireman's Ins. Co. of Newark, N.J. v. DuFresne,* 676 F.2d 965, 969 (3d Cir. 1982). If the nonmoving party's evidence is a mere scintilla or is not "significantly probative," the court may grant summary judgment. *Liberty Lobby, Inc., supra,* 477 U.S. at 249-250. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587.

In this case, Jersey College moved for summary judgment. Jersey College has argued, in part, that Ms. Fisher is barred by the doctrine of collateral estoppel from re-litigating the issues

previously determined by the arbitration award, as confirmed by the state court. Jersey College has also argued that Ms. Fisher's conduct was willful and malicious causing an injury warranting a finding that the debt arising therefrom is nondischargeable under section 523(a)(6). This court must determine first whether collateral estoppel applies in this case, and if not, whether there is a genuine dispute as to any material fact such that summary judgment would not be appropriate in this instance.

## B. Applicability of Collateral Estoppel

The doctrine of collateral estoppel, now commonly referred to as issue preclusion, prevents parties from litigating issues when a court of competent jurisdiction has already adjudicated the issue on its merits, and a final judgment has been entered as to those parties or their privies. *Witkowski v. Welch*, 173 F.3d 192, 198–99 (3d Cir. 1999) (citing *Schroeder v. Acceleration Life Ins. Co.*, 972 F.2d 41, 45 (3d Cir. 1992)). The Judgment is a final judgment however it is also important to note that under New Jersey law, determinations made by an arbitrator are entitled to preclusive effect if the proceedings entailed the essential elements of adjudication. *Konieczny v. Micciche*, 305 N.J. Super. 375, 384–85 (App. Div. 1997) (citing *Hernandez v. Region Nine Hous. Corp.*, 146 N.J. 645, 660 (1996)). Thus, New Jersey courts acknowledge the preclusive effect of an arbitration determination when the party to be bound had an ample chance to be heard in the arbitral forum. *Carino v. Allstate Fin. Servs., LLC*, No. A-5717-09T4, 2011 WL 1364150, at *5 (N.J. Super. Ct. App. Div. Apr. 12, 2011) (citing *Panniel v. Diaz*, 376 N.J. Super. 597, 611 (Law Div. 2004)). Finally, the Supreme Court has held that the principles of collateral estoppel apply to nondischargeability proceedings in bankruptcy. *In re Benun*, 386 B.R. 59, 73 (Bankr. D.N.J. 2008), *aff'd in part and vacated in part sub nom. Fuji Photo Film Co. v. Benun*, No. CIV.A.08-1927(SRC), 2008 WL 5084572 (D.N.J. Dec. 1, 2008).

Under New Jersey law, a party asserting collateral estoppel must satisfy five elements:

1) the issue to be precluded is identical to the issue decided in the prior proceeding;
2) the issue was actually litigated in the prior proceeding;
3) the court in the prior proceeding issued a final judgment on the merits;
4) the determination of the issue was essential to the prior judgment; and
5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

*Leonelli-Spina v. Albro*, No. CIVA 09-1864 (PGS), 2010 WL 1380877, at *5 (D.N.J. Apr. 1, 2010), *aff'd sub nom. In re Leonelli-Spina*, 426 F. App'x 122 (3d Cir. 2011) (citing *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008) (citations omitted)).

Determination of whether these requirements have been met should be made "by the bankruptcy judge after a careful review of the record of the prior case, a hearing at which the parties have the opportunity to offer evidence, and the making of findings of fact and conclusions of law." *Leonelli-Spina v. Albro*, No. CIVA 09-1864 (PGS), 2010 WL 1380877, at *5 (D.N.J. Apr. 1, 2010), *aff'd sub nom. In re Leonelli-Spina*, 426 F. App'x 122 (3d Cir. 2011) (citing *In Re Ross*, 602 F.2d 604, 607 (3d Cir. 1979)). The Third Circuit requires bankruptcy courts, in determining whether to apply collateral estoppel to a state court judgment, to review the entire record of the

state court's trial. *In re Nugent*, 254 B.R. 14, 29 (Bankr. D.N.J. 1998) (citing *In re Ross,* 602 F.2d 604, 608 (3d Cir. 1979)). However, when deciding a motion for summary judgment determining whether a debt is dischargeable, a bankruptcy court is not required to hold an evidentiary hearing separate from the summary judgment argument. *In re Nugent*, 254 B.R. 14, 29 (Bankr. D.N.J. 1998).

This court struggles with whether the second prong of the test set for the in *Leonelli-Spina,* case above is satisfied in this case because it is not certain it can find that the matter was actually litigated. Courts have generally found that "[a]n issue is actually litigated when it is "properly raised, by the pleadings or otherwise, . . . and is determined." *In re Bashlow Realty Co. v. Zakai*, No. ADVPRO08-02040 (DHS), 2010 WL 1529568, at *6 (Bankr. D.N.J. Apr. 14, 2010) (quoting *Allesandra v. Gross,* 187 N.J. Super. 96, 105–6, 453 A.2d 904, 909 (N.J. Super. Ct. App. Div. 1982). Generally, the New Jersey Supreme Court has applied collateral estoppel where "a party has had his day in court on an issue," *In re Azeglio*, 422 B.R. 490, 495 (Bankr. D.N.J. 2010 (quoting *Zirger v. General Accident Ins. Co.,* 144 N.J. 327, 338, 676 A.2d 1065, 1071 (1996)), and where a "judgment on the merits" is entered "in an adversarial context." *In re Azeglio*, 422 B.R. 490, 495 (Bankr. D.N.J. 2010) (quoting *Slowinski v. Valley National Bank,* 264 N.J. Super. 172, 182–83, 624 A.2d 85, 90–91). But of course, as their federal counterparts do, New Jersey courts agree that collateral estoppel may not be applied in the case of a default judgment. *In re Azeglio*, 422 B.R. 490, 494 (Bankr. D.N.J. 2010); *see also In re Hawkins*, 231 B.R. 222, 231 (D.N.J. 1999) ("Pursuant to New Jersey law, collateral estoppel does not apply to default judgments because such judgments are not 'actually litigated.'").

Because of this, it is not clear is whether here, a full case put on without participation by Ms. Fisher, but a determination based on evidence taken and witnesses examined, is a case "actually litigated" for collateral estoppel purposes. Or to put it another way, was the arbitration hearing akin to a default? There are several decisions discussing circumstances similar to this case, and those cases indicate that collateral estoppel should not be applied here. For example, in *Azeglio*, 422 B.R. 490, there was substantial participation by the defendant in pretrial activity, including filing responsive pleadings and participating in depositions, but his attorney withdrew prior to trial and the defendant failed to appear at trial. The court determined that collateral estoppel was not appropriate in those circumstances. In doing so, it noted that:

> The canvassing of New Jersey case law governing collateral estoppel reveals that the requirement that a matter be "actually litigated" means just that: the party against whom the doctrine is sought to be applied must have had a full and fair opportunity to litigate the issue to be precluded, so that a judgment on the merits, reached after an adversarial hearing, is entered.

*Id.* at 497 (Bankr. D.N.J. 2010). The court found that a judgment entered without the participation of the defendant in the action was akin to a default judgment, despite the fact that the court heard testimony and accepted evidence. This court agrees. Ultimately, collateral estoppel "'has its roots in equity, [and] will not be applied when it is unfair to do so.'" *Id.* (quoting *Olivieri v. Y.M.F. Carpet, Inc.,* 186 N.J. 511, 522 (2006)). As such, and perhaps with an overabundance of caution, this court cannot give collateral estoppel effect to the Award and Judgment because it does not find that the matter had been "actually litigated" where Ms. Fisher was not active in the

presentation of evidence. Thus, the court cannot grant summary judgment solely and simply based upon the doctrine of collateral estoppel in this case.

For all that, the matter cannot be concluded there. As this is a motion for summary judgment, the court is required to consider all materials submitted, including the pleadings, depositions, and answers to interrogatories together with any affidavits. *Mennen Co. v. Atl. Mut. Ins. Co.*, No. 93-CIV-5273 (WGB), 1999 WL 33654297, at *2 (D.N.J. Oct. 26, 1999). A dispute involving a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Mennen Co. v. Atl. Mut. Ins. Co.*, No. 93-CIV-5273 (WGB), 1999 WL 33654297, at *2 (D.N.J. Oct. 26, 1999) (citing *Healy v. New York Life Ins. Co.*, 860 F.2d 1209, 1219 n. 3 (3d Cir. 1988)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (stating that a dispute is genuine when it is "triable," that is, when reasonable minds could disagree on the result). Because Ms. Fisher did not dispute any of Jersey College's allegations regarding her conduct, this court need only determine whether, based on those undisputed facts, Jersey College is entitled to judgment as a matter of law.

## C.  523(a)(6) – Willful and Malicious Injury

Section 523(a)(6) of the Bankruptcy Code provides that: "A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity. 11 U.S.C. § 523(a)(6); *In re Hawkins*, 231 B.R. 222, 228 (D.N.J. 1999). "An injury is willful and malicious under the Code only if the actor purposefully inflicted the injury or acted with substantial certainty that injury would result." *In re Conte*, 33 F.3d 303, 305, 308 (3d Cir. 1994). "[T]he standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard." *In re Peterson*, 332 B.R. 678, 682–83 (Bankr. D. Del. 2005) (citing *Grogan v. Garner*, 498 U.S. 279, 291, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991)). This burden rests on the moving creditor. *Id*. In this case, the evidence presented shows that an injury was caused to Jersey College. The court must determine whether that injury was willful and malicious, entitling Jersey College to judgment as a matter of law.

To be "willful and malicious" the debtor's actions "the Bankruptcy Code requires at least a deliberate action that is substantially certain to produce harm." *Conte,* 33 F.3d at 307. Actions that are merely negligent or reckless will not suffice. *In re Pearman*, 432 B.R. 495, 500–01 (Bankr. D.N.J. 2010) (citing *In re Ingui*, 2006 WL 637139 *2, n. 2 (Bankr. E.D. Pa. 2006)). An action is "willful" within the meaning of section 523 "when the actor purposefully inflicts injury or acts in such a manner that he is substantially certain that injury will result." *Jersey Cent. Power & Light v. Breslow*, No. 12-CV-05425 FLW, 2013 WL 632124, at *2 (D.N.J. Feb. 20, 2013) (citing *In re Conte*, 33 F.3d 303, 305); *In re Hawkins*, 231 B.R. 222, 228 (D.N.J. 1999) (citing *In re Conte*, 33 F.3d 303, 305.

Moreover, an action is malicious if it is done without cause or excuse. Ill will or spite is not necessary to prove that an action was malicious. *In re Conte*, 33 F.3d 303, 308 (3d Cir. 1994) citing *Collier on Bankruptcy* ¶ 523.16[1]. *See also In re Andrews*, No. 03 16226 GMB, 2006 WL

4452986, at *3 (Bankr. D.N.J. May 10, 2006); *In re Berlin*, 513 B.R. 430, 435 (Bankr. E.D.N.Y. 2014); and *In re Goidel*, 150 B.R. 885, 888 (Bankr. S.D.N.Y. 1993). "The term 'malicious' has been defined as a wrongful act done consciously and knowingly in the absence of just cause or excuse." *In re Winn*, No. 97-32749, 1998 WL 34069150, at *1 (Bankr. S.D. Ill. May 7, 1998).

In this case the record is replete with evidence that Ms. Fisher deliberately acted in a way that was substantially certain to produce harm. For example, Ms. Fisher purposefully created and published a video on Youtube entitled "Jersey College is a Fraud," in which she alleged that Jersey College was committing consumer fraud on its students (without basis) and was not an accredited school (a blatantly false statement) along with the circulation of a petition that contained similar allegations. This conduct, in combination with the spreading of these allegations to the public through picketing and other social media, and to government bodies as well as affiliate clinical sites, was deliberate. Ms. Fisher had to be substantially certain that naturally a harm would result in the form of damage to the operations, reputation and enrollment of Jersey College. Similarly, the Instagram page titled "boycottjerseycollege," and the hash tag associated with this social media "#shutdownjerseycollege" provide further evidence of Ms. Fisher's intent to inflict a specific injury – to cause others to boycott the school or shut it down.

After Ms. Fisher was specifically informed of the damage her conduct was causing via two separate letters sent to her from Jersey College, she continued her actions. Thus she then had to be aware that her continued deliberate actions caused injury. Evidence produced by Jersey College shows that Ms. Fisher's purposeful actions lead to the disruption of Jersey College's operations and caused economic damage through damage to its reputation and reduction of enrollment. Ms. Fisher knew or was substantially certain what consequences would result from her acts and still went ahead with them with a desire to cause an injury. She "is treated by the law as if [she] had in fact desired to produce the result." *Conte*, 33 F.3d at 308 *citing Restatement (Second ) of Torts* § 8A, Cmt. B. (1979) Without question, Ms. Fisher's actions were willful under section 523(a)(6).

Ms. Fisher alleges that her statements are protected by the First Amendment and as a result, the court cannot find the requisite malicious conduct. But the Supreme Court has repeatedly found that "[T]here is no constitutional value in false statements of fact. Neither the intentional lie nor the careless error materially advances society's interest in 'uninhibited, robust, and wide-open' debate on public issues." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40 (1974) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S. Ct. 710, 721, 11 L. Ed. 2d 686 (1964)). Although the level of protection offered to speech by the First Amendment varies depending on the subject matter of the speech and the individual about whom the speech is directed, even the broadest protections laid out by the Court do not protect statements made with knowledge of falsity. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974); *New York Times Co. v. Sullivan*, 376 U.S. 254 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964).

Under the broadest test, speech is not protected by the First Amendment if it is made with "'actual malice' that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 14 (1990) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279  280, 84 S. Ct. 710, 726); *see also Faltas v. State Newspaper*, 928 F. Supp. 637, 644 (D.S.C. 1996) (where the plaintiff was a public figure at the relevant time as to the relevant matter, the plaintiff must demonstrate, by clear and convincing evidence, that the

defendants made false statements with knowledge that the statements were false or with reckless disregard for the truth), *aff'd,* 155 F.3d 557 (4th Cir. 1998)).

In this case, Jersey College produced evidence demonstrating that Ms. Fisher conscious and knowing actions involved actual false statements about Jersey College. For example, it was a false statement to say that Jersey College was unaccredited. In addition, Jersey College also submitted evidence that Ms. Fisher's actions involved statements alleging fraud and other inaccuracies and made with a reckless disregard of whether they were false or not. For example, claims of fraud by Jersey College were a reckless disregard of whether they were false. Jersey College provided Ms. Fisher with the standards for graduation. Ms. Fisher was aware of the standards. The evidence shows that the statements and conduct were false and/or reckless and done without cause or excuse. The First Amendment simply does not protect Ms. Fisher in this instance. As such, Ms. Fisher's actions were willful and malicious under section 523(a)(6).

## CONCLUSION

This court reviewed the entire record and found that no reasonable trier of fact could come to any other determination than that Ms. Fisher was substantially certain of the injury her conduct would cause and that the conduct was done without cause or excuse. As such, the debt owed by Ms. Fisher to Jersey College as a result of her willful and malicious conduct is nondischargeable under section 523(a)(6) of the Bankruptcy Code. As the state court has already made a determination as to the extent of that debt, Ms. Fisher must seek any remedy she may have, if any, from the appropriate state court forum.

An appropriate judgment has been entered consistent with this decision.

The court reserves the right to revise its findings of fact and conclusions of law.

/s/ Andrew B. Altenburg, Jr.
United States Bankruptcy Judge

Dated: January 24, 2017